Kelly A. FLOOD, Plaintiff,

v.

COUNTY OF SUFFOLK,
et al., Defendants.

No. CV 90–3071.

United States District Court,
E.D. New York.

May 14, 1993.

Patrick Kevin Brosnahan, Jr., Babylon, NY, for plaintiff.

Robert J. Cimino, Suffolk County Atty. by Jeltje DeJong, Asst. County Atty., Hauppauge, NY, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Pursuant to 42 U.S.C. §§ 1983 and 1985, Kelly A. Flood ("plaintiff") brought the instant suit against the County of Suffolk and various individuals associated with the Suffolk County Police Department (collectively referred to as "defendants"), on the ground that plaintiff was denied her constitutional rights to due process and privacy. Now before the Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is granted.

## I. BACKGROUND

In October 1988, plaintiff, a probationary police officer with the New York City Police Department ("NYPD"), was placed on the civil service eligibility list for candidates seeking to become police officers with the Suffolk County Police Department ("SCPD"). Defendants allege that they encountered many difficulties with plaintiff during the application/screening stage.[1] Most important among these difficulties, plaintiff's application indicated problems with alcohol, prior use of marijuana and cocaine, and contained various inaccuracies and discrepancies regarding her work history, counseling history, and drug treatment.

Specifically, the application acknowledged that both plaintiff's mother and father had had serious discussions with her about drinking and asked her to cut down. Furthermore, plaintiff admitted that she may have driven while impaired one or two times since she had been placed on the SCPD eligibility list. (Defendants' Exhibit F, p. 1).

Furthermore, although plaintiff admitted to using drugs on her application, she failed to indicate any drug use on her medical questionnaire. Moreover, although plaintiff admitted on her application that she had used cocaine and marijuana and had lent money to her boyfriend to purchase drugs, she indicated that she had never done anything which, if detected, would be considered a crime. Plaintiff asserts that her inconsistent responses were not misstatements because her use of marijuana and cocaine occurred almost four years earlier and she characterized the amounts involved as *de minimus*. "[She] did not consider experimentation a couple of times a crime...." (Plaintiff's Affidavit, ¶ 28).

Plaintiff also stated in an interview with the SCPD that she never underwent counseling. Subsequently, she admitted that she went to a few sessions regarding family matters. Defendants assert that plaintiff was in fact receiving drug treatment in a rehabilitation program known as East End Alternatives. Plaintiff denies this allegation, asserting that she was only receiving family counseling. (Plaintiff's Affidavit, ¶ 35).

In addition, plaintiff stated on her application that she was never fired from previous employment. Defendants assert that their investigation reveals that plaintiff was in fact terminated from her employment at Genovese under the suspicion of theft. Plaintiff denies this as well. (Plaintiff's Affidavit, ¶ 34).

In December 1988, after defendants became aware of these discrepancies, plaintiff was told that she would be required to take a second polygraph examination.[2] Defendants claim that plaintiff declined to do so, and that she requested that her name be removed from the list of applicants seeking to become Suffolk County police officers.[3]

---

1. Defendants maintain that plaintiff did not submit her application and preliminary paperwork on time, that her paperwork was incomplete, and that she was two hours late for her agility examination. Plaintiff denies these allegations generally, contending that defendants did not encounter "many" problems. (Plaintiff's Memorandum of Law, p. 2)

2. She had already successfully completed an earlier polygraph test.

3. Plaintiff denies this allegation, asserting that she was willing to take a second polygraph test.

When defendants first determined that plaintiff would be required to take a second polygraph examination, they contacted the Internal Affairs Division of the NYPD regarding the availability of a polygraphist.[4] Because a NYPD probationary police officer was the subject of a SCPD investigation, the NYPD Internal Affairs Division requested information concerning the circumstances leading to SCPD's request for the second polygraph examination. At that time, one of the defendants allegedly informed the NYPD that plaintiff "may be involved in drug use and problems with alcohol."[5]

Three days later, the NYPD informed the SCPD that it had a release signed by plaintiff authorizing the disclosure of confidential information by the SCPD. NYPD then requested and received copies of plaintiff's SCPD application documents from defendants. Although plaintiff had originally disputed the existence of said release, it has since been produced to this Court.[6]

Apparently based on the information received from the SCPD, on August 31, 1989, plaintiff was advised by the NYPD that she was disqualified from her probationary position due to "falsification, character and illegal drug use." Plaintiff appealed her disqualification, and the New York City Civil Service Commission held that pursuant to § 50, subd. 4(f) of the New York Civil Service Law, the discharge was proper because plaintiff made intentional misstatements on her NYPD application and on her supplementary questionnaire. (Defendants' Exhibit C, p. 3). Plaintiff subsequently had an Article 78 hearing where it was held, on June 3, 1991, that the Civil Service Commission's determination was not arbitrary and capricious. (Defendants' Exhibit D, p. 3).

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). All reasonable inferences and ambiguities are drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Thompson*, 896 F.2d at 720 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) (per curiam)).

### A. Plaintiff's Property Interest Claim

Plaintiff in the instant case claims that she had a property right in her probationary position with the NYPD. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court held that procedural due process requirements "apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Id.* at 569, 92 S.Ct. at 2705.

Property interests are determined and created by state laws that "secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. "In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause.*" *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 967 (2d Cir.1988). In

---

**4.** Because they questioned the accuracy of the polygraph test previously given by the SCPD, defendants sought to have the second test conducted by the NYPD.

**5.** Plaintiff objects to the characterization of her alcohol use as a "problem" and the implication that she continues to use drugs today.

**6.** The NYPD Release states in relevant part:

I do hereby authorize ... all Law Enforcement Agencies ... to furnish the New York City Police Department with any and all available information and copies of records ... and the outcome of any investigations ongoing or discontinued regarding me in order that they may determine my suitability for possible appointment as a Police Officer or Civilian Employee with the New York City Police Department.

New York, it is well settled that in the absence of proof that a probationary employee was fired for unconstitutional or unlawful purposes, such an employee may be discharged without a hearing and without a statement of reasons for the discharge. *See York v. McGuire,* 63 N.Y.2d 760, 480 N.Y.S.2d 320, 321, 469 N.E.2d 838, 839 (Ct. App.1984) (upholding discharge of probationary police officer without a hearing). Indeed, plaintiff herself stated, "[w]hen you are on probation, you can get fired for any reason with no recourse or hearing." (Plaintiff's Affidavit, ¶ 32). Therefore, plaintiff possessed no property right in her probationary position, and her discharge from the NYPD presents no federal constitutional problems.[7] Accordingly, plaintiff's claim of a due process violation resulting from her termination from the NYPD is dismissed.

■ Plaintiff further appears to claim that she had a property right in the "appointment process" for a position with the SCPD, and that the SCPD's harassing behavior in evaluating her application constituted a violation of her due process rights.[8] When determining whether a plaintiff has a property interest in the fairness of an application process, the Court must look to the nature of the interest at stake in the proceeding, not the nature of the proceeding itself. *Dangler v. Yorktown Central Schools,* 771 F.Supp. 625, 628 (S.D.N.Y.1991). In *Dangler,* a high school student was declined membership to the National Honor Society. He brought a claim pursuant to the Fourteenth Amendment, asserting that he was denied his right to a fair application process for Honor Society membership. The court held that because the plaintiff had no property interest in

Honor Society membership, he had no property interest in the integrity of the selection process. *Id.; see also Burns v. Sullivan,* 619 F.2d 99, 104 (1st Cir.1980) (where plaintiff had no property interest in promotion, court need not examine whether state law procedures were followed); *Contra Costa Theatre, Inc. v. City of Concord,* 511 F.Supp. 87, 89–90 (N.D.Cal.1980) (because plaintiff had no property right to zoning permit, he could not claim a denial of due process resulting from misconduct in the hearing for such permit), *aff'd,* 686 F.2d 798 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983); *Jacobs, Visconsi & Jacobs Co. v. Lawrence, Kan.,* 715 F.Supp. 1000, 1004–06 (D.Kan.1989) (plaintiff had no property interest in rezoning process where there was no property right to have property rezoned), *aff'd,* 927 F.2d 1111 (10th Cir.1991).

■ The interest at stake in the present case is plaintiff's appointment to the SCPD. Under New York law, it is well established that one's mere placement on an eligibility list does not create a property interest. *Cassidy v. Mun. Civil Serv. Com. of New Rochelle,* 37 N.Y.2d 526, 375 N.Y.S.2d 300, 302–03, 337 N.E.2d 752, 753–54 (Ct.App.1975); *Serva v. Office of Ct. Admin.,* 92 A.D.2d 587, 459 N.Y.S.2d 475, 477 (2d Dep't 1983). Therefore, in the present case, plaintiff had nothing more than an expectation of being appointed to the SCPD. Such interest does not amount to a property interest under the Fourteenth Amendment. Where no constitutionally protected property interest is at stake, there is no basis for a federal court to examine the claim that the procedures actually followed were not proper. *Contra Costa Theatre, Inc.,* 511 F.Supp. at 90. According-

---

7. Even if plaintiff did have a property interest in her probationary position with the NYPD, the Court finds that her due process rights were not violated. Plaintiff had a hearing before the New York Civil Service Commission, where it was determined that her discharge was proper under Civil Service Law § 50, subd. 4. Section 50, subd. 4 provides that a civil service applicant can be disqualified for intentionally making a false statement of any material fact in her application or for attempting any deception or fraud in her application. N.Y. McKinney's Civil Service Law §§ 50, subd. 4(f) and (g); *see Griffin v. Carey,* 547 F.Supp. 449, 456 (S.D.N.Y.1982) (applying statute). Plaintiff also had an Article 78 hearing

where it was held that the determination of the Civil Service Commission was not arbitrary and capricious.

8. Plaintiff asserts that the SCPD conducted a "witch hunt" in order to obtain negative information about her past and then required her take a second polygraph test. (Plaintiff's Memorandum of Law, p. 4). Plaintiff further alleges that she was harassed by defendants because of their animus toward her father, a Suffolk County police officer, who was on probation during plaintiff's application period.

ly, plaintiff's claim of a due process violation resulting from an improper application process is dismissed as well.[9]

## B. *Plaintiff's Liberty Interest Claim*

■ Plaintiff claims that she was terminated from her probationary position with the NYPD as a result of the SCPD's statement to the NYPD that she "may be involved with drug use and problems with alcohol." Plaintiff asserts that this disclosure by defendants without notice and an opportunity to clear her name constituted a deprivation of her liberty interest in violation of the Fourteenth Amendment.

In *Roth,* the Court acknowledged an individual's interest ·in avoiding "a stigma or other disability" that forecloses her ability to take advantage of future employment opportunities. *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. However, in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court made it clear that "reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1161. Once the plaintiff makes out a claim of stigmatization under *Roth* and *Davis,* the remedy mandated by the Fourteenth Amendment is notice and "an opportunity to refute the charge" at a hearing. *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. "The purpose of such notice and hearing is to provide the person an opportunity to clear his name." *Id.* at n. 12.

Plaintiff in the present case has not offered evidence of injury sufficient to meet the "reputation-plus" standard established in *Paul v. Davis.* The evidence set forth by defendants clearly indicates that plaintiff was not terminated from her probationary position because of what defendants said to the NYPD regarding her drug use and possible alcohol problem. At a hearing held before the New York City Civil Service Commission, it was determined that plaintiff was terminated because of intentional omissions and fraudulent misstatements in her application. (Defendants' Exhibit C, p. 3). Therefore, regardless of how stigmatizing defendants' characterization of plaintiff's drug and alcohol use may be, it was not the reason for her termination.

■ As already discussed, reputation alone is not sufficient to establish a liberty interest claim, and will not trigger Fourteenth Amendment protections. Accordingly, plaintiff's disqualification from the NYPD without a pre-termination hearing to clear her name did not violate her constitutional rights.[10]

■ Furthermore, plaintiff cannot assert that the statement allegedly made by defendants placed a stigma on her so as to foreclose her freedom to take advantage of other employment opportunities. In order to establish such a claim, the Court must find that the charges against the employee were made public, and the employee must allege that the charges were false. *Brandt v. Board Cooperative Educ. Serv., Third Supervisory Dist.,* 820 F.2d 41, 43 (2d Cir.1987); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 446–47 (2d Cir.1980).[11]

---

9. In any event, even assuming *arguendo* that plaintiff does have a constitutionally protected right in a fair application process, the Court finds that the SCPD's thorough background check and the requirement that she take a second polygraph examination did not violate this right. Because of the nature of police work, "[t]he public interest requires that law enforcement officers be of impeccable character and integrity...." *Matter of Cacchioli v. Hoberman,* 31 N.Y.2d 287, 338 N.Y.S.2d 865, 870, 291 N.E.2d 117, 120 (Ct.App.1972); *see also Porto v. Town/Village of Harrison,* 100 A.D.2d 870, 474 N.Y.S.2d 129, 130 (2d Dep't 1984) (requirement to take a polygraph test did not constitute a violation of police officer candidate's rights).

10. Even if plaintiff lost her position as a New York City probationary officer as a result of the information supplied by defendants, disclosures made pursuant to a release signed by a probationary police officer are not protected by the Fourteenth Amendment. *Redmond v. City of Overland Park,* 672 F.Supp. 473, 483 (D.Kan.1987). In the present case, plaintiff signed a release authorizing all law enforcement agencies to disclose to the NYCPD "any and all available information."

11. A plaintiff is only required to raise the issue of falsity regarding the stigmatizing charges, not prove it, in order to establish a right to a name-clearing hearing. *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977).

■ Even assuming that the publication requirement was satisfied in the present case,[12] the Court finds that there is no genuine issue of material fact as to the truth of the statement made to the NYPD. Defendants allegedly stated that plaintiff "*may* be involved with drug use and problems with alcohol." (emphasis added). In plaintiff's SCPD application she admitted to using marijuana and cocaine in the past. Moreover, she admitted to lending money to a boyfriend so that he could purchase drugs. Furthermore, when asked on her application whether any family member had ever had a serious discussion with her about her drinking and asked her to cut down, she responded that both of her parents thought that she should drink less. (Defendants' Exhibit E, p. 1). In addition, when asked how many times she had driven while intoxicated or impaired within the previous three months, she stated that she "[p]ossibly could have been considered impaired 1–2 times." (Defendants' Exhibit E, p. 1).

Even assuming that defendants' alleged statement regarding plaintiff's drug and alcohol use is stigmatizing and may foreclose future employment opportunities, plaintiff's liberty interest is not implicated where the defamatory statement is substantially true. *Codd v. Velger*, 429 U.S. 624, 628–29, 97 S.Ct. 882, 884–85, 51 L.Ed.2d 92 (1977) (non-tenured employee is not entitled to a name-clearing hearing where the substantial truth of the statement cannot be contested); *Smith v. Lehman*, 689 F.2d 342, 346 (2d Cir.1982) (plaintiff's liberty interest claim is without merit where he cannot challenge the substantial accuracy of the charges against him), *cert. denied*, 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1018 (1983). Accordingly, plaintiff's disqualification from the NYPD without a name-clearing hearing was not a due process violation and defendants' motion for summary judgment with regard to this claim is granted as well.

#### C. *Plaintiff's Right to Privacy Claim*

■ Plaintiff also claims that her right to privacy was violated by defendants' disclo-

sure of information to the NYPD without her permission. This claim clearly fails, however, in light of the fact that she signed a release *authorizing* the disclosure of all information from the SCPD to the NYPD. *Redmond*, 672 F.Supp. at 483 (no constitutional right to privacy regarding records for which plaintiff signed a release). Accordingly, defendants' motion for summary judgment with respect to plaintiff's right to privacy claim is also granted.

#### D. *Plaintiff's Pendent State Claims*

Because plaintiff's federal claims pursuant to 42 U.S.C. §§ 1983 and 1985 are dismissed, the Court declines to exercise supplemental jurisdiction over the asserted state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, plaintiff's pendent state claims are dismissed as well.

### III.   CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted.

SO ORDERED.

---

**12.** The Court notes that the statement at issue was made by one of the defendants during a phone call and later memorialized by the NYPD in a log entry. Therefore, it is possible that any publication to plaintiff's potential future employers may be attributable to the NYPD rather than to defendants.