20-1126-cv
*Gonzalez v. City of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

    **At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of February, two thousand twenty-one.**

PRESENT:
    DENNIS JACOBS,
    JOSEPH F. BIANCO,
    MICHAEL H. PARK,
     *Circuit Judges.*

-------------------------------------------------------------------

EMILIO GONZALEZ,

    *Plaintiff-Appellant*,

   v.                  20-1126-cv

CITY OF NEW YORK, JAMES COX, in his personal and official capacity, MARIA MAGLIO-SCOTTI, in her personal and official capacity, SEUNGHWAN KIM, in his personal and official capacity, and KATHERINE REILLY, in her personal and official capacity,

    *Defendants-Appellees*.

-------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT
EMILIO GONZALEZ:                         KENECHUKWU C. OKOLI, Law Offices of K.C. Okoli, P.C., New York, New York.

FOR DEFENDANTS-APPELLEES:                KATE FLETCHER, of Counsel (Richard Dearing, Deborah A. Brenner, *on the brief*), for James E. Johnson, Corporation Counsel of the City of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Woods, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Emilio Gonzalez, a former administrative claims examiner for the Office of the New York City Comptroller, appeals from a judgment of the district court (Woods, *J.*) granting summary judgment in favor of the City of New York and the individual Defendant-Appellees (collectively, "New York City") on all his federal claims under 42 U.S.C § 1983 and declining to exercise supplemental jurisdiction over his remaining state law claims. On appeal, Gonzalez only challenges the district court's decision with respect to the following Section 1983 claims: (1) his retaliation claims arising out of Defendants' failure to promote him to Deputy Director of Settlements and Adjudications, its failure to interview him for the position of Senior Court Representative, and its act of bringing disciplinary charges in front of the New York City Office of Administrative Trials and Hearings ("OATH"); (2) his due process claim based on the denial of his third and fourth applications for leave without pay; and (3) his constructive discharge claim.[1]

---

[1] As to his First Amendment retaliation claim regarding New York City's failure to interview him for the Senior Court Representative position, Gonzalez only included one sentence, in the "Statement of Issues

2

We review a grant of summary judgment de novo. *Gorman v. Rensselaer County*, 910 F.3d 40, 44 (2d Cir. 2018). In doing so, we "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We assume the parties' familiarity with the underlying facts and prior record of proceedings, to which we refer only as necessary to explain our decision to affirm.

## I. Gonzalez's Retaliation Claims

A district court's evaluation of a retaliation claim based on a violation of the Fourteenth Amendment under Section 1983 mirrors the analysis of such a claim under Title VII, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015), and is thus assessed under the three-step burden-shifting analysis enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), *see Littlejohn v City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (explaining that the *McDonnell Douglas* framework applies to Title VII, Section 1981, and Section 1983 claims).

---

Presented for Review" section of his brief, contesting the district court's conclusion that Gonzalez spoke as an employee when he lodged internal complaints, precluding his First Amendment claim. However, "[m]erely mentioning or simply stating an issue in an appellate brief is insufficient to preserve it for our review." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) (internal quotation marks and brackets omitted). Therefore, we need not consider his First Amendment claim, nor do we need to consider his other claims not raised on appeal, because any challenges to such claims have been waived. *See Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012) ("We regard as waived any challenges by [plaintiff] to adverse decisions that are undiscussed.").

Under that framework, the plaintiff must first establish a prima facie case of retaliation by showing "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 282–83 (2d Cir. 2001)). "[T]he court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive" sufficient to carry the plaintiff's initial burden. *Id.* Then, the burden shifts to the employer to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks omitted). Provided the employer proffers such a reason, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretext for retaliation. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). In the context of a Section 1983 retaliation claim, a plaintiff must prove pretext by showing that the adverse action would not have taken place "but-for" the retaliatory motive. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (applying "but-for" causation to First Amendment retaliation claims); *see also Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019) (holding that "but-for" causation is required for Section 1983 discrimination claims).

On appeal, Gonzalez challenges the district court's grant of summary judgment as to three claims of retaliation based on New York City's decisions not to promote him to Deputy Director of Settlements and Adjudications, not to interview him for the position of Senior Court Representative, and to bring disciplinary charges against him in the OATH proceeding. As set

forth below, whether considered individually or in the aggregate, the district court properly granted summary judgment on these claims.

### A. Failure to Promote

Gonzalez claims that he was not promoted in retaliation for his refusal to follow an instruction to terminate a Black employee in the Comptroller's Officer under Gonzalez's supervision. The district court granted summary judgment as to this retaliation claim on two grounds: (1) Gonzalez failed to show a causal connection, and thus could not make out a prima facie retaliation claim; and (2) New York City carried its burden to "offer a legitimate, non-discriminatory reason for their refusal to promote Gonzalez" because he performed poorly in his interview and appeared unprepared for the job as supported by testimony and contemporaneous notes, and Gonzalez failed to demonstrate that those reasons were pretextual. *Gonzalez v. City of New York*, 442 F. Supp. 3d 665, 688 (S.D.N.Y. 2020).

In a retaliation case, a plaintiff may show causation either through direct evidence of retaliatory animus or indirectly through evidence that the adverse employment action closely followed the protected activity or other circumstantial evidence including disparate treatment in comparison with other employees. *See Hicks*, 593 F.3d at 170. On appeal, Gonzalez challenges the dismissal of this claim solely based upon the district court's conclusion that, because six months elapsed between his refusal to fire the employee (*i.e.*, the protected activity) and New York City's failure to promote him, he could not demonstrate a causal connection between the two events. First, Gonzalez contends that fewer than six months elapsed between the protected activity

5

and adverse employment action.[2] Second, Gonzalez asserts that, in any event, the passage of six months or more does not impose a legal bar on demonstrating causation.

However, we need not decide this issue because, even assuming *arguendo* that he could make out a prima facie case on causation under the *McDonnell Douglas* framework based upon temporal proximity, Gonzalez has put forth no evidence that undermines New York City's legitimate, non-discriminatory reasons not to promote him – namely, his poor interview performance and lack of applicable experience – or shows that those reasons are pretextual.[3] *See Hicks*, 593 F.3d at 164. To support those reasons, New York City submitted contemporaneous interview notes of the three members of the interview committee.[4]

To defeat a motion for summary judgment, "a plaintiff must come forward with some evidence of pretext in order to raise a triable issue of fact." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). Moreover, although "temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation . . . without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward

---

[2] The parties do not dispute that Defendant-Appellee Seunghwan Kim instructed Gonzalez to fire Luc Pierre in February 2015 or that the decision to not promote Gonzalez occurred approximately six months later, in September 2015. Yet, Gonzalez suggests "a couple of months" may have elapsed "before it dawned on Kim and Gonzalez's superiors that Gonzalez was not going to carry out the instruction," Appellant's Br. at 25, which Gonzalez contends means that the protected activity at issue did not occur until April 2015 – four-and-a-half months before the adverse employment action.

[3] Although New York City argues that Gonzalez waived any challenge to the district court's alternative ruling by failing to specifically raise an argument on appeal as to that ruling, we need not address that issue because we conclude that the district court's decision is correct on the merits.

[4] Among those documents were the notes of the General Counsel of the Comptroller's Office, who is a non-party and stated, among other things, as to Gonzalez's interview: "Resume misstates work . . . Dissembled over failure to pass bar since '93. Was promoted <u>very</u> recently and yet seeking another promotion when he has not mastered property damage div. chief work. Could not articulate why ready for a second promotion w/in months and what lasting improvements he's made to [P]roperty [D]amage [division]." App'x at 936 (alterations in original).

some evidence of pretext." *Id.*; *see also Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014). Thus, Gonzalez's bare contention of temporal proximity, unaccompanied by any other evidence from which a rational jury could find pretext, is insufficient to overcome summary judgment.

### B. Failure to Interview

Gonzalez further claims that he was subject to unlawful retaliation when New York City failed to interview him in 2016 for a Senior Court Representative position because he filed an internal grievance complaint with the Comptroller about discrimination and corruption. After finding the existence of a prima facie case based upon temporal proximity, the district court accorded the Administrative Law Judge's ("ALJ's") factual findings in the OATH proceeding preclusive effect.[5] Those factual findings by the ALJ demonstrated legitimate, non-discriminatory reasons for New York City's failure to interview Gonzalez for the position, and the district court concluded that summary judgment was warranted because Gonzalez failed to put forth any evidence of pretext. On appeal, Gonzalez challenges the determination that the ALJ's findings are entitled to preclusive effect and attempts to justify his absenteeism. We find these arguments unpersuasive.[6]

---

[5] The district court accorded preclusive effect to five facts established in the OATH proceedings: (1) Gonzalez was "guilty of excessive and unauthorized absences from work"; (2) he "stopped attending work because he was upset at his demotion"; (3) he made false statements on a timesheet (about working a full day), as well as on his Department of Investigation ("DOI") questionnaire and his application for the Senior Court Representative position (by falsely claiming three years' experience as an Assistant District Attorney when, in fact, he had failed the New York State bar exam and did not hold that title); (4) he "engaged in insubordination"; and (5) he operated a jet ski while on FMLA leave for a purported injury, indicating dishonesty and violating the Comptroller's rules. *Gonzalez*, 442 F. Supp. 2d at 694–95.

[6] As a threshold matter, although Gonzalez contends that the issue in this litigation is not identical to the issue litigated in the OATH proceeding because the parties are different, that argument is unavailing. It is irrelevant that none of the defendants in this litigation was party to the OATH proceeding because New

It is well established "that, in § 1983 actions, the factual determinations of a state administrative agency, acting in a judicial capacity, are entitled to the same issue and claim preclusive effect in federal court that the agency's determinations would receive in the State's courts." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 728 (2d Cir. 2001). Under New York law, issue preclusion applies to quasi-judicial administrative fact-finding when "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). "The burden of proving identity of the issue rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that he or she did not have a full and fair opportunity to litigate the issue." *Kosakow*, 274 F.3d at 730.

The ALJ's factual determinations – that Gonzalez was excessively absent from work and engaged in other misconduct – are identical to certain factual issues here, *i.e.*, whether there was a basis for the alleged misconduct cited by New York City to support its adverse employment action against Gonzalez. Factual findings made by a hearing officer in an OATH disciplinary proceeding as to the basis of a plaintiff's termination may properly preclude any dispute of fact on those findings in this Section 1983 litigation. *See Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 49 (2d Cir. 2014) ("The *factual* findings [in a Section 75 hearing] supporting the hearing officer's

York law permits a third party to invoke the doctrine of issue preclusion against a party that had a full and fair opportunity to litigate an issue. *See Koch v. Consol. Edison Co.*, 62 N.Y.2d 548, 556–57 (1984) (permitting non-mutual issue preclusion and rejecting a plea to reintroduce a mutuality requirement).

8

ultimate conclusion—that Matusick had indeed committed the charged conduct, *i.e.*, that he had failed to respond to calls and slept on duty— . . . precluded Matusick from arguing otherwise at trial." (emphasis in original)). Contrary to Gonzalez's contention, it is irrelevant that the OATH proceeding was commenced under N.Y. Civil Service Law Section 75, as opposed to Section 1983, because the issues entitled to preclusive effect (findings of excessive absenteeism and other misconduct) were solely factual. *See id.* Where the findings of the ALJ are merely factual, they "need only deal with the same past events to be considered identical." *Id.* at 48 (internal quotation marks omitted).

Gonzalez does not specifically challenge that he had a full and fair opportunity to litigate the findings of absenteeism and other misconduct in the OATH proceedings, nor could he. Gonzalez obtained discovery, engaged in motion practice, participated in a two-day hearing at which he testified and his lawyer cross-examined witnesses, introduced exhibits, presented the testimony of another witness, and had the opportunity to object to the submission of exhibits. Instead, Gonzalez argues that the district court glossed over which claims Gonzalez had a full and fair opportunity to litigate, and because the issues litigated in the OATH proceedings are not identical to his claims for damages on the basis of unlawful retaliation, he did not have a full and fair opportunity to litigate his discrimination and retaliation claims.

Gonzalez is correct that a "finding of termination for just cause does not necessarily negate a subsequent finding of discrimination." Appellant's Br. at 21 (quoting *Hill v. Coca Cola Bottling Co.*, 786 F.2d 550, 553 (2d Cir. 1986)). But that is not at issue here. The district court expressly disclaimed precluding Gonzalez's litigation of his discrimination or retaliation claims and proceeded with the complete *McDonnell Douglas* analysis. In doing so, the district court

9

determined that Gonzalez's excessive absenteeism and other misconduct constituted legitimate, non-discriminatory reasons for New York City's refusal to interview Gonzalez and held that Gonzalez failed to carry his burden of providing evidence from which a rational jury could find those reasons were pretextual. Only then did the district court determine that summary judgment should be granted on Gonzalez's claim. We agree with the district court's analysis.[7] Accordingly, summary judgment was properly granted to New York City on this claim.

### C. Disciplinary Charges

Gonzalez also argues that the initiation of the disciplinary charges was in retaliation for his filing of a complaint with DOI in January 2017. With respect to this portion of his retaliation claim, as with the failure to promote him, the ALJ's factual findings from the OATH disciplinary hearing have preclusive effect on the issue of whether the misconduct occurred. Thus, Gonzalez cannot demonstrate that the charges were false and has provided no evidence from which a rational jury could find that the initiation of the charges was a pretext for retaliation. Accordingly, the district court properly granted summary judgment to New York City based on Gonzalez's claim for retaliation arising from the initiation of disciplinary charges.

## II. Due Process Claim

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In a Section 1983

---

[7] In an effort to show pretext, Gonzalez suggests that, despite his excessive absenteeism (he missed approximately 288 full work days in 2016 and 2017, including every work day in 2017 through the commencement of his disciplinary hearing), he should have at least been interviewed for the position. As the district court aptly concluded, it is "common sense" and "reasonable for an employer to require an employee to show up for work before considering that employee for a promotion," *Gonzalez*, 442 F. Supp. 2d at 695, and no rational jury could find pretext based on this record.

10

claim to enforce procedural due process rights, a court must determine, first, whether a constitutionally protected interest is implicated, and if so, next decide what process is due. *See Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). On appeal, Gonzalez only advances one of the three theories for his due process claim that he made in the district court. Specifically, he alleges a constitutionally protected interest based on his entitlement to consideration of his claim for leave under New York State Civil Service Law Sections 71 and 72, as to which he was denied due process.

As a threshold matter, Section 71, which creates post-termination rights for employees, is wholly inapplicable to Gonzalez's claim regarding leave.[8] N.Y. Civ. Serv. Law § 71. With respect to Section 72, we have held that it does not create a constitutionally protected interest because "it provides a *discretionary* course of action for employers." *Jannsen v. Condo*, 101 F.3d 14, 16 (2d Cir. 1996); *see also* N.Y. Civ. Serv. Law § 72 ("When in the judgment of an appointing authority an employee is unable to perform the duties of his or her position by reason of a disability . . . the appointing authority *may* require such employee to undergo a medical examination . . . . If, upon such medical examination, such medical officer shall certify that such employee is not physically or mentally fit to perform the duties of his or her position, the appointing authority shall notify such employee that he or she *may* be placed on leave of absence . . . . An employee shall be allowed ten working days from service of the notice to object to the imposition of the proposed

---

[8] Similarly, in connection with this claim, Gonzalez also asserts in a conclusory fashion that he was entitled to the procedural safeguards set forth in Section 75. Section 75 requires a hearing and provides certain other procedural safeguards for a civil service employee facing disciplinary action or termination. N.Y. Civ. Serv. Law § 75. There is no allegation of a procedural violation as to his OATH hearing, and Section 75 thus has no application to his due process claim regarding leave.

11

leave of absence and to request a hearing." (emphasis added)).[9]  Furthermore, a hearing held under

Section 75 may constitute adequate process, even when the Section 72 process also could have

been utilized.  *See Considine v. Pirro*, 832 N.Y.S.2d 620, 621–22 (App. Div. 2007) (rejecting

plaintiff's argument that Section 72 applied and finding that Section 75 hearing was proper to

adjudicate charges of excessive absenteeism due to plaintiff's physical incapacity).  Accordingly,

the district court properly granted summary judgment on Gonzalez's due process claim.

## III.    Constructive Discharge Claim

As to the constructive discharge claim, the district court held that Gonzalez was precluded

from asserting it because he was actually terminated.  We agree.

"Constructive discharge of an employee occurs when an employer, rather than directly

discharging an individual, intentionally creates an intolerable work atmosphere that forces an

employee to quit involuntarily."  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir.

1996); *see also Fitzgerald v. Henderson*, 251 F.3d 345, 357–58 (2d Cir. 2001).  It is axiomatic that

*constructive* discharge – *i.e.*, being forced to resign involuntarily – differs from *actual* discharge

or termination.  *See Penn. State Police v. Suders*, 542 U.S. 129, 148 (2004) (contrasting actual

termination – always a product of the company – and constructive discharge, which involves "an

employee's decision to leave and precipitating conduct").  Therefore, a claim for constructive

---

[9] Gonzalez contends *Jannsen v. Condo*, 101 F.3d 14, 16 (2d Cir. 1996), may be distinguished because *Jannsen* involved a probationary employee who lacked a legal claim of entitlement under state law, as compared to Gonzalez, a non-probationary civil servant who had a property interest in his civil service career.  However, in *Jannsen*, we determined that Jannsen lacked liberty and property interests in her employment as a probationary employee but separately held that Section 72 created no entitlement because it is subject to employer discretion.  *Jannsen*, 101 F.3d at 16–17.  Therefore, because it provides a discretionary course of action, Section 72 does not create an entitlement for either a probationary or non-probationary employee.

12

discharge will not lie where plaintiff did not resign but instead was terminated. *See Green v. Town of East Haven*, 952 F.3d 394, 404 (2d Cir. 2020). Here, it is uncontroverted that Gonzalez was terminated without resigning or seeking alternate employment. His belief that he was constructively discharged when his employer failed to approve his return to work is irrelevant. *See id.* at 409. Nothing was stopping him from resigning at that time, and he was subsequently terminated. Accordingly, given his actual termination, the district court properly granted summary judgment on Gonzalez's constructive discharge claim.

\*                    \*                    \*

We have considered Gonzalez's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13